IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
EASTERN DIVISION

FILED

OCT 21 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

MICHAEL KOKOSKI,

     Plaintiff,

VS.

R. L. NORWOOD, individually; and
in his official capacity, as the
Warden of the Federal Correctional
Complex in Victorville, California;
and, OTHER KNOWN AND UNKNOWN NAMED
AGENTS OR EMPLOYEES, individually;
and in their official capacity, as
agents or officers of the Department
of Justice, and/or the Federal Bureau
of Prisons;

     Defendants.

Civil Rights Action no.
5:05-0849
(to be supplied by clerk)

Cognized in Diversity of
citizenship, pursuant to
Title 28, U.S.C., § 1331.

Jury trial Demanded

## CIVIL RIGHTS COMPLAINT FOR MONEY DAMAGES

COME NOW, the plaintiff, MICHAEL KOKOSKI, acting pro se,
in the above styled case, pursuant to Title 28, U.S.C., section
1331, and by this complaint, hereby invokes the geographical,
personal and subject matter jurisdiction, of this Court, to
settle all disputes, between the parts to this controversy,
in diversity of citizenship; necessary to vindicate

1 of 38

basic Constitutional rights to access the courts, in non-frivolous Habeas Corpus proceedings without having to fear retaliation from prison officials nor interference from Officer's or Agent's of the United States, for having engaged in Constitutionally protected conduct within the jurisdiction of this federal court.

I.

At all times relevant to this case, the plaintiff, MICHAEL KOKOSKI ("kokoski"); has been a private citizen of the several State of Kentucky, who, is being held, unlawfully, under color of authority of the United States, under guise of two fraudulently begotten, and void; criminal judgments, issued from the United States District Court in the Southern District of West Virginia, in the unlawful federal prosecution of the UNITED STATES OF AMERICA, V. MICHAEL KOKOSKI, criminal case no.

5:92-00090 (4th Cir. (W.Va)); and the <u>UNITED STATES</u>

<u>OF AMERICA, v. MICHAEL ALLEN KOHOSKI</u>, Criminal Case no.

5:96-00064 (4th Cir. (W.Va)); — at the FEDERAL

CORRECTIONAL COMPLEX in Victorville, California;

### 2.

At all times relevant to this complaint, the
defendant, R.L. NORWOOD; individually, has been a
private citizen of the State of California; and,
in his official capacity, a Citizen of the United States;
where he is employed as the Warden of the FEDERAL
CORRECTIONAL COMPLEX, in Victorville, California:
Being the holder of the unenforceable judgments,
said, in paragraph no.1 (above);

### 3.

At all times relevant to this complaint, the defendant's
OTHER KNOWN AND UNKNOWN NAMED AGENTS OR EMPLOYEE'S;
individually, have been private citizins of the state
of California, and/or private citizins of one or more
States, of the Union, of these united States, and/or

of one or more of the several states of these united States; and, in their official Capacity(s), Citizins of the United states; where they are employed as officer's or Agent's of the Department of Justice, in the District of Columbia, and /or the federal Bureau of Prisons, in Annapolis Junction, Maryland;

4.

On or about September 6th, 2005, the plaintiff, Mr. Kokoski, caused the clerk of the United states District Court for the central District of California, Eastern Division, at Riverside, California; to file a petition for a writ of Habeas Corpus pursuant to Title 28, U.S.C., section 2241 to enjoin the defendant, R. L. NORWOOD, from executing/ ~~and/or~~ enforcing, subject void criminal judgments, said, herein above, in paragraph no. 1.;

4 of 38

5.

On or about September 7th, 2005, the clerk of this Court mailed the plaintiff, Mr. Kolaski, a "NOTICE OF REFERAL TO A UNITED STATES MAGISTRATE JUDGE", Id., Record no. 2 ("R-2"); thereby informing the party's, thereto, including defendant R.C. Norwood, that the habeas corpus petition, ¶ 4, supra, had been filed, under case number EDCV05-837 VAP (FMO); by the Clerk of this court, on that date, and subsequently "assigned to the calender of the Honorable Virginia A. Phillips, U.S. District Judge." And "reffered to U.S. Magistrate Judge Fernando M. Olguin, who is authorized to consider preliminary matters and conduct all further hearings as may be appropriate or necessary;" Id.

6.

On september 15th, 2005, the petitioner, Mr. Kokoski, addressed a letter to the clerk of this court, in the subject Habeas Corpus Cause, supra, ¶¶ 4-5, explaining to the court, that, "I was denied copies", i.e. of the original petition [R-1], "by prison staff", at the defendant, R.L. Norwood's FEDERAL CORRECTIONAL COMPLEX, "[w]hereof, I requested a return copy of the original petition with all attachments, thereto, necessary for the petitioner to research and prepare a seperate memorandum in support, thereof, containing his legal theories and citations to law and authorities", i.e. in support of the Habeas Corpus petition, in that seperate case; Id at R-4.

6 of 38

## 7.

On or about September 17th, 2005 at about 7:45 PM (P.S.T.) there was a riot at the prison where the petitioner, Mr. kokoshi, is being unlawfuly restrained of liberty under color of authority of the United States, by guise of said void judgments, by the defendant R.L. NORWOOD, supra, ¶ 1.; an institutional lockdown insued, until normal operations were resumed, on or about September 28th, 2005;

## 8.

On or about September 19th, 2005, Plaintiff kokoski, handed a cop-out, BP-S148.055 form to the B-Lower, Unit officer, to deliver to the B-Lower Unit correctional counselor Ms. Gonzolez ("Ms. G."); by sliding it under her office door; requesting copies to access the court, in the seperate matter of MICHAEL KOKOSKI, V. UNITEDSTATES, civil case no. 04-cv-429-kkc (EDKy. 2004); pursuant to the August 1st, 2005 appellate court order in case no.

7 of 38

05-5150 (6th Cir. (Ky.)), requiring Plaintiff to file an original prose appellant's brief, and Six (6) copies, thereof, by September 28th, 2005, in federal habeas corpus jurisdiction; challenging lawful enforcement of said void judgments, in that seperate jurisdiction; Id.

9.

On or about September 20th, 2005, Ms. G., duplicated 4 copies of the subject pro se appellant's brief for filing in the United States Court of Appeals for the Sixth Circuit, pursuant its subject August 1st, 2005 court order, ¶ 8, supra; however, she refused to duplicate the required six copies specified in the written court order, pluse two (2) additional copies, for service, and file stamp return service Requested. Rather, she became angry, and said " I don't care what the court

copies of the subject pro se appellant's brief pursuant to BOP PS 1315.07.;

10.

On September 21st, 2005, at about 12:55 am, (PST), Unit Manager Merlak [sic] ("Merlak") , and Associate Warden Iruin ("Iruin") made rounds in the housing unit, and Plaintiff handed them a cop out addressed to the B-Lower Unit Manager Ms. Clinton ("Clinton"), on the reverse side of the subject August 1st, 2005 court order, ¶ 8; requesting 4 additional copies of the subject pro se appellants brief needed to access the courts; along with a seperate cop out addressed to defendant R. L. Norwood, with a copy of a seperate court order from the United States court of Appeals for the Fourth circuit, in the criminal matter of United States, v. Michael Allen Kokoski,

Criminal case no. 5:96-00064, ¶ 1, supra, in §2255 proceedings, necessary to file an application for a certificate of appealability pursuant to Title 28, U.S.C., §2253(c), in appellate case no. 05-6941 (4th Cir.(W.V.)), from the district court's denial, thereof, in a criminal case, pursuant to the written appellate court ordered due date of September 26th, 2005; Id

11.

Kokoski, also handed Merlak and Irvin, an original, copy of the 22 page Informal Appellant's Brief, with copy of said appellate court order, ¶ 10, supra, and said cop-out, Id., requesting 8 copies, pursuant to Fed. R. App. P. 21, needed to access the United States Court of Appeals for the Fourth Circuit in appellate case no. 05-6941; Id. (on that date and time)

12.

Merlak took the papers, ¶ 11., supra, and said, "you have to give these to your unit team," to which Kokoski replied, saying, "they said that they will not do it," and so, "I am following the chain of command". Merlak and Irvin took the papers, Id., and left the unit with them.

11 of 38

13.

On September 22nd, 2005 Kokoski mailed the pro se appellant's brief, and two (2) copies to the United States Court of appeals for the Sixth Circuit in case no. 05-5150, and a copy to the opposing counsel, pursuant to the court's subject August 1st, 2005 Order, ¶ 8, supra, with a letter explaining that prison officials refused to duplicate the required number of copies specified in the Order, pursuant to PS 1315.07; Id.

14

On September 23rd, 2005 Kokoski spoke to the B-Lower secretary Ms. Shaw ("Shaw"), at 9:50 AM, and informed her that Ms. G. had made 4 copies of the pro se appellant's brief for filing in case no. 05-5150, ¶ 9, supra; but that 4 additional copies were required pursuant to the specifications contained in the subject August 1st, 2005 court order, ¶ 8-9, and asked her to duplicate the additional copies pursuant to PS 1315.07. Ms. Shaw wrote down Kokoski's cell housing number, and said, " I understand, and will ask Ms Clinton to come talk to you". (or using similar words). Ms. Clinton is the B-Lower Unit Manager ("Clinton").

15.

Kokoski also informed Ms. Shaw, on that date and time, ¶ 14, supra, that he had contacted his wife, Kimberly Kaye Kokoski/Vance ("Kim"), to inform her of the situation, and had asked Kim to call Ms. Clinton and Ms. Shaw to remind them that he required duplications to access the courts pursuant to court orders in the criminal and habeas corpus cases in verious jurisdictions; Ms. Shaw said that she understood.

16.

On September 25th, 2005 at 9:20 am Kokoski spoke to Ms. G., who ordered him to move to another assigned housing cell: at which time she returned all of the papers he handed to Merlak and Irvin, for duplication, pursuant to appellate court order in case NO. 05-6941, ¶ 11., supra, unduplicated. which papers were never duplicated and not mailed to the appellate court, due to no fault of Kokoski.

13 of 38

On September 25th, 2005 at about 5:00 pm, and at about 6:00 pm Kokoski asked Ms. G. to please duplicate his papers to access the courts, ¶ ¶ 11, and ¶ 14, pursuant to the specified requirements contained in the court orders that she had read; to which she would not respond;

18

On September 25th, 2005, Kokoski mailed a document to this court, in case no EDCU 05-837, ¶¶ 4-5, supra, titled "MOTION FOR RETURN OF THE WRIT"; showing the court that a "[v]oid judgment is a legal nullity and may be challenged not only directly but also on collateral attack in a proceeding in any court where its validity has come into issue". (Citations ommited); requesting the court to return the writ and require defendant R.L. Morrison, to respond to the grounds of voidness raised in the Habeas Corpus Case; (citations omitted) Id.

14 of 38

19.

On September 26th, 2005 Kokoshi spoke to Ms. Shaw at about 9:00pm (PST), concerning their conversation on September 23rd, 2005 regarding copies of paper needed to access courts ¶¶ 14-15, supra. To which she responded, by saying, "I spoke to Ms. Clinton about making copies per court orders and she instructed me not to do it." (or using similar words)

20

At the above date and time ¶ 19., Kokoshi called Kim on the telephone, and she told him that she had called Ms. Clinton to remind her to duplicate papers to access the courts pursuant to court orders, Id., to which Ms. Clinton had told Kim that it was none of Kim's business (about the copies). Kim reportedly replied to Ms. Clinton, by saying, " I'm sure he has asked, and the reason I'm calling is because you will not respond to his requests, and I am concerned". (or using similar words)

15 of 38

On September 26, 2005, at about 10:00 am, another prisoner told kokoski that he had over heard Ms. G. tell kokoski "I don't care what the court order says", ¶ 9, supra; and, furthermore, told kokoski that Ms. G. immediately thereafter "walked away from your cell, turned, looked straight into my eyes, and said "fuck that mother fucker"; then turned again and walked away toward the Unit team offices; Id.

On September 27th, 2005 at about 11:15 Am (P.S.T.), kokoski attempted to hand a cop-out to the Deputy warden, invoking PS 5100.07, informing defendant R.L. NORWOOD that Habeas corpus proceedings had been initiated, by kokoski, in this court, pursuant to Title 28, U.S.C., §2241, in the case of Michael kokoski, v. R.L. norwood, Warden, Case no. EDCV 05-00837, ¶ 6, supra," to enjoin enforcement of criminal judgments based upon the grounds of voidness due to fraud on the court and want of jurisdiction in the trial courts". Requesting that defendant R.C. norwood

" Please do not transfer me from this Institution until proceedings are final". However, the cop-out, supra, was addressed to R. L. Norwood, Warden, and the Deputy Warden refused to accept it, rather, he said to Kokoski, that, " I run this joint and anything you give me must have my name on it". Kokoski then gave the subject cop-out to Ms. Clinton, who read it, and said : " Your not designated here", and " I'll have to run it by legal". (or using similar words). Kokoski then whatched Clinton show the cop out to Ms. Irvin, who read it, laughed out loud, then handed it back to Ms. Clinton. Merlak was a wittness to that fact. At about 12:45 pm, on that date, Ms. E. refused to give Kokoski envelopes needed to access the courts, saying " we don't give them out anymore, you have to buy them", knowing Kokoski's Inmate Trust Fund Account was frozen and therefore inaccessable to him.

23

On or about September 30th, 2005 Kokoski received a complete copy of the original petition with all

17 of 38

attachments, in the mail, from the clerk of this court, which prison officials had refused to duplicate for him, prior to filing; that he had subsequently requested, from the clerk, as necessary to fill a seperate memorandum in support of the petition for a writ of habeas corpus, containing his legal theory of the case, with citations to Law, and authorities in support of his grounds of voidness of underlying criminal judgments and the ineffectiveness or inadequitness of remedy by motion to test legality of detention: going to the jurisdiction of this court, in that seperate case. ¶ 6, supra.

24.

Kokoski used the copy of the petition with all attachments, ¶ 23, supra, to prepare such a seperate memorandum, Id., that he completed on October 2nd, 2005. However, ms. G., said that she was too busy to duplicate it on that date. On October 3rd, 2005. Ms. G. also said that she was too busy

to duplicate it; Id.

25.

On October 4th, 2005 Kokoski asked correctionall counselor Hill to duplicate, said seperate memor dudum, ¶¶ 23-¶24, supra, at about 10:00am; Later that day, Kokoski also asked staff members Shachiford, and MS G. for duplications, of one (1) copy of about 75 pages to access this court in federal habeas corpus jurisdiction; Id, and, MS. G. provided him about 25 copies of the 75 pages needed, at about 8:00pm (PST); Id.

26.

On October 5th, 2005 at about 11:00am, Kokoski asked Ms. G. to finish making a copy of the remaining 50 pages (Approximate), remaining, of the subject seperate memorandum for filing in federal habeas corpus jurisdiction, in this court, ¶ 25, supra, Id., but she said that she was too busy. At about 11:08am Kokoski asked Ms. Shaw to finish copying the last 50 pages; but she said that she was too busy. Then, at about 11:58am Kokoski asked Ms. Clinton, to duplicate a copy of the 50 pages needed

19 of 38

to access this court in federal habeas corpus jurisdiction; and she said "no". Kokoski followed the chain of command, to assistant Warden Merlak (acting), who said "no". Thereafter Kokoski asked the Deputy Warden, at about 12:00pm, to please instruct staff to duplicate a copy of 50 pages necessary to access this court in federal habeas corpus jurisdiction; and he said "no", then instructed a correctional officer to ~~take~~ lock Kokoski up, in the special Housing Unit Until 3:00pm, apparently in retaliation for having engaged in constitutionally protected conduct; i.e. filing petition(s) for a Writ of Habeas Corpus, and/or requesting copies of meaningful papers needed to access the courts in non-frivolous criminal and/or habeas corpus proceedings pursuant to valid court order(s) or rules of court procedure(s); Ibid, supra.

20 of 38

27.

Due to said unlawful or illegal retaliation against kokoski, for having engaged in constitutional conduct, ¶ ¶ 1-26, supra, the defendant's punished kokoski, by denying him access to the courts, knowing him to be indigent or without means to duplicate his meaningful papers to the courts in non-frivolous habeas corpus or criminal cases pursuant to court ordered deadlines or requirements of rules of court procedure or statutes; and, then, furthermore, punished him by placing him in the special Housing Unit, on ~~December~~ October 5th, 2005, from 12:01pm to 3:01 pm, causing kokoski loss or damages in violation of his First, Fifth and Eight Amendment rights provided in the constitution ~~of the~~ for the United states of september 25th, Year of our Lord seventeen Hundred and Eighty Nine ("constitution"); Id.

21 of 38

On October 5th, 2005 Kokoshi mailed the original copy of the subject supplemental memorandum in support of the petition for a writ of Habeas Corpus, with FIVE Exhibits, attached and in-corporated therein, by refference; and a motion for leave, to file them, under cover of a letter to the Clerk of this court, explaining to the court that prison officials refuse to copy any pleadings necessary to access the court, in federal Habeas corpus jurisdiction, at government expense, as required of the defendant R.L. NORWOOD, pursuant to PS 1315.07; under the circumstances present in the case. ¶¶ 1-27, supra, and, requesting return receipt of a file stamped copy, of the court filing, for plaintiff's records. see, Michael Kokoski, v. R.L. Norwood, warden, Cause no. 05-837 (9th Cir. (Cal.)), ¶¶ 4-7, supra; Id.

On September 16th, 2005, the United States District court in the northern District of Georgia, Atlanta Division, entered an Order, in the seperate matter of <u>MICHAEL KOKOSKI, v. G. MALDONADO, JR, Warden</u>, cause no. 1:05-cv-1827-ODE, in federal Habeas corpus jurisdiction pursuant to Title 28, U.S.C., § 2241, granting plaintiff's September 12th, 2005 "<u>MOTION FOR ADDITIONAL EXTENTION OF TIME AND FOR AN ORDER DIRECTING THE CLERK TO FORWARD A COPY OF THE ORIGINAL PETITION TO THE PETITIONER, FORTHWITH</u>"; (R-6), <u>Id</u>., stating that "the petitioner will be allowed an extention of time until october 17, 2005 to file objections to the [Magistrate's] report and recommendation. No further extentions will be allowed;" (R-7), <u>Id</u>., at ¶ 3

## 30.

On or about October 6th, 2005 at about 5:00pm, Kokoski received a copy of the district court's subject September 16th, 2005 order, ¶ 29, supra. Whereof, he prepared a twenty (20) page "NOTICE", in response, thereto, refutting the subject report and recommendation of a magistrate judge as being based upon a clear error of law. [28, USCA 636]

## 31.

On or about October 9th, 2005 at about 7:36pm (P.S.T.), Kokoski saw Ms. G., duplicating copies of a pro se supplemental brief that he had prepared, free of charge, for his cell mate, for filing in the unvelated matter of United States, v. DONALD RAY EVANS, case no. 05-2109 (8th cir. (Mo.)), in response to his lawyers no merits brief filed under guise of Anders, v.

24 of 38

California, ___ US ___ (1967); pursuant to the controlling precepts of Penson, v. Ohio, 488 US 50 (1988). Id.

32.
On the same date and time, ¶ 31, supra, in the B-Lower Unit team office, Id., Kokoski asked Ms. G., to if she would copy 20 pages for filing in habeas corpus action 05-8127 (11th CPr. (Ga.)), ¶ 29, supra, pursuant to the court's subject September 28th, 2005 order, granting an extention of time to file written objections to the magistrates report and recommendations, for submition to the district court on October 17th, 2005 in federal habeas corpus jurisdiction; whereof two (2) copies of twenty (20) pages were required. Id, to which she said " I have been instructed not to copy anything for you". I replied that " I have no other way to copy this and PS 1315.07 requires the Warden to copy these papers"; to which she said: "I'm sorry Buddy, its out of my hands.";

25 of 38

## 33.

On october 10th, 2005, at about 11:48 AM, Kokoski spoke to the (acting) Institutional Duty officer ("I.D.O."), at main line, during the noon meal; explaining to him that Kokoski's Institutional Trust Fund Account ("Account"), had been unlawfully or illegally encumbered or frozen, at the FEDERAL CORRECTIONAL INSTITUTION in Manchester, Kentucky, by the Director of the BOP, and/or by known, and unknown named agents or employee's of the Department of Justice; who forced Kokoski to sign BP form 42's; thereby encumbering his account, as a "condition", for them to duplicate his meaningful papers needed to access the court's in non-frivolous collateral proceedings to criminal judgments, federal habeas corpus proceedings, and/or civil action suite(s) to challenge conditions of confinement or to vindicate basic constitutional rights. (or using similar words) Id., and that he had not

received any funds, from outside the institu-
tion, for more than about two (2) years, prior
to being transfered to the Institution in
Victorville, California to take part in the BOP's
Life Connections Program. That he has not been
to commissary since he arrived, there; and
has zero (0) available balance in his account;
and that his Unit team and defendant R.L.
NORWOOD, refuse to copie his meaningful papers
for filing in habeas corpus proceedings, i.e. even though
they know Kokoshi has no other way to duplicate
them; and refise to honor any court order(s),
containing filing dead lines and specific numbers
of copies required; in violation of Kokoski's
First Amendment right under the constitution, and
in complete disregard for defendant R.L. NORWOODS
duty to provide a reasonabe number of copies to
Indigent Inmates, at government expense, needed
to access the courts, pursuant to PS 1315.07

27 of 38

And, as required of him under the provisions
of the First Amendment to the Constitution,
as held by the Court in _Lewis, v. Casey,_ ___us
___ (1996); _Bounds, v. Smith,_ ___ us ___(1974);
_Avery, v. Johnson,_ ___ us ___ (    ); and their
progenies. _Id._ (Finding the defendant R.C. Norwood,
in this case, has a duty to provide Kokoski necessary
Legal services (copies), and materials (postage,
paper and envelopes), needed to access the courts,
to file his meaningful papers, in non-frivolous
civil actions challenging conditions of confinement,
needed to vindicate basic constitutional rights;
criminal appellate cases, and federal habeas
corpus cases; under the circumstances in
this case, and in light of the facts not in
dispute ) _Id._

34.

In further support of this complaint, Kokoski attaches hereto and incorporates herein by reference the following Exhibits:

1. The original copy of his "DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS," with attached and incorporated two (2) page computerized printout of his account (showing an available balance of $0.88); dated October 10th, 2005, at 9:44 am (signed by Ms. G., as the Authorized officer of Institution); Id. p. 2. (i.e. Exhibit no. 1.) ("Ex 1."); and

2. A complete copy of plaintiff's "TRUFACTS" Inmate statement of account, dated September 30th, 2005, with all attachments (33+ pages); that was prepared on August 5th, 2005 at 10:42 am, by Ms. Clinton; for Kokoski, who delivered it to his hand, on that date; ("Ex 2.");

35.

After speaking to the I.D.O., on that date, and time ¶ 33, supra; he told Kohoski that he would speak to Ms. G., who was standing main line with him, and determine if she would make the required two (2) duplications of the subject twenty (20) page notice, as required, pursuant to the subject September 26th, 2005 Court Order; PS 1315.07 ; and the First Amendment to the Constitution. Id Kohoski sat down to eat the noon meal, and watched the I.D.O. speak to Ms. G. about the duplications; then, after eating ashed the I.D.O. what had transpired.

36.

The I.D.O. replied that Ms. G., told him that "she has been instructed not to make you any photo copies under any circumstances"; and, that he would make a note of that fact in the I.D.O.'s log book, and speak to Clinton, to investigate

about 3:01 pm ; in retaliation for having engaged in constitutionally protected conduct ¶¶ 1-36, supra.

### 38.

The amount of money in this controversey is in excess of Ten thousand dollars (i.e. $10,000⁻); dischargable in U.S. currency to the Plaintiff, Mr. Kokoski, by the defendants named and Unknown named, herein; Id.

### 39.

Jurisdiction is properly invoked in this Court, by Kokoski, pursuant to the controlling provissions of law contained in Title 28, U.S.C.A., Section 1331; Id

### 40.

Kokoski has suffered similar retaliation in the past, from prison officials, at other BOP facilities; in retaliation for having engaged in constitutionally protected conduct, under similar

32 of 38

who had instructed Ms. G., not to make
Kokoski any copies under any circumstances;
and why; And, that he would note the results
of his investigation(s) in the I.DO. Log
book; Id.

## 37.

Kokoski now files this Complaint, as an
action in diversity of citizenship to recover
all damages from the defendants, to which he
may be entiteld to receive, for having violated
his civil rights under the First, Fifth
and Eight Amendments to the constitvtion
for having retaliated against him for
engaging in constitvtionolly protected
conduct; by punishing him without due process
of law; and for having deprived him of
liberty, by placing him in the Special Housing Unit
on october 5th, 2005 from about 12:01 pm to

31 of 38

circumstances. Whereof, he has previously exhausted all Administrative Remidies, prior to filing this complaint; by filing BP-8, BP8'b, BP. 9, BP10 and BP11's, to no avail. Thus, it would prove futile to file identical ad-ministrative remedies involving the same similar circumstances, howbeit under slightly different factual situations. Moreover, Kohoski is not "in custody" of the BOP, nor of the defendants, nor of any party whatsoever. Rather, he is being unlawfully restrained of liberty under color of authority of the United States.

41.

Therefore, ¶ 40, supra; Kohoski was not required to exhaust any administrative remedies prior to filing this complaint. Which fact is so, because exhaustion is not a jurisdictional requirement; does not apply to party's who are not in lawful custody; is an affirmative

defense to be raised by opposing party(s);
is not required in retaliation suite, as
herein, where plaintiff is likely to suffer
immediate injury or loss if denied access
to the court; or, either, those remedies
have already been exhausted in prior BP8½(s);
BP 9(s); BP10(s); and BP 11(s); and/or
would or have proven futile; Id.

WHEREFORE, and based upon the foregoing facts
and law, Kohoshi demands a trial by jury, in
this case, and requests monitary Damages from
the defendants for having violated his civil rights,
in amounts to be determined by the jury and
not less than $10,000.00 to compensate him
for all injuries or lossess arising out of the
illegal or unlawful conduct of the defendants in
this case. Including all Actual damages, compensatory
damages, punitive damages, nomikal damages; all
other damages he may be entiteld to receive, and

34 of 38

all attorney fee's and costs; pluse declaratory and injuntive relief; Including

A. That the court delare that the defendant's acted with deliberate indifference or incompetence in retaliating against Kokoski for having engaged in constitutionally protected conduct;

B. That it be unlawful for the Goevernment to indimnify the defendant's for having violated Kokoski's civil rights in deliberate indifference or incompetence; and

C. That a defendant who is found to be deliberately indifferent or incompetent in a retaliation suite, by denying an indigent access to the court in federal habeas corpus jurisdiction may not be indemnified by the federal Goevernment, from paring damages awarded by the jury; and

35 of 38

D. That Plaintiff need not exhaust Administrative Remedies to file retaliation action necessary to vindicate basic constitutional right to access to the courts in federal habeas corpus jurisdiction claiming unlawful restraint of liberty under color of authority of the United States or voidness as grounds for entitlement to a writ of Habeas Corpus pursuant to Title 28, U.S.C, Section 2241;

## III

Plaintiff, likewise requests emergency injuntive relief, Instada, necessary to pro-hibit the Deffendant R. L. NORWOOD, from:

36 of 38

(a) Transfering Kokoshi from this jurisdiction untill habeas corpus proceedings in the seperate, underlying case, in this court is final ¶¶ 4-7, supra;

(b) Retaliating against Kokoski for engaging in constitutionally protected conduct while this case is pending outcome

(c) Changing his job detail or placing him in the special Housing Unit, in retaliation for engaging in constitutionally protected conduct pending outcome of this case; and

(d) prohibiting the defendants from refusing to duplicate Kokoski's meaningful papers needed to access the courts in certain appropriate types of cases (to be written by the court using proper language; and

3) of 38

(e) To prohibit defendants from denying Kokoshi sufficient postage, paper and envelopes needed to access the courts and serve copies of papers on counsel for opposing party's; and

(f) All further relief to which he may be entitled to.

Respectfully Submitted,

by Michael Allen Kokoshi, S.P.C.

_____          MICHAEL KOKOSHI
October 20th, 2005            FEDERAL CORRECTIONAL COMPLEX
DATE                          02115-061
                             P.O. BOX 5300, B1D
                             ADELANTO, CALIFORNIA
                             [92301]

38 of 38

MICHAEL MOYOSHI
FEDERAL CORRECTIONAL COMPLEX (Medium #1)
02115-061
P.O. Box 5300, B1/2
ADELANTO, CALIFORNIA

[ 92301 ]

[ Legal Mail ]

Return Service Requested :

Clerk, United States District court
3470 Twelfth street
Riverside, California [ 92501 ]

